UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVON R. HAYES,                    : CIVIL NO: 3:11-CV-00168
                                   :
             Plaintiff             :
                                   : (Judge Caputo)
        v.                         :
                                   : (Magistrate Judge Smyser)
JEFFREY BEARD, *et al.*,            :
                                   :
             Defendants            :


**REPORT AND RECOMMENDATION**


        The plaintiff is a state prisoner.  He is proceeding

*pro se*.  He filed a third amended complaint raising many claims

against many defendants.  We recommend that the defendants'

motions to dismiss the third amended complaint be granted as to

all but a few of the plaintiff's claims.



I.  Background and Procedural History.


        The plaintiff began this 42 U.S.C. § 1983 action by

filing a complaint.  He later filed an amended complaint and a

second amended complaint.

A.   The Second Amended Complaint.

The second amended complaint named the following individuals with the Pennsylvania Department of Corrections and the State Correctional Institution at Dallas (SCI-Dallas) as defendants: 1) Jerome W. Walsh, the Superintendent; 2) Stanley Bohinski, the Medical Director; 3) Myron Stanishefski, the Correctional Health Care Administrator; 4) Thomas Leskowsky, a register nurse supervisor; 5) Lea Liput, a registered nurse supervisor; 6) Shannon Pieczynski, a licensed practical nurse; 7) C.J. McKeown, a hearing examiner; 8) Robert B. MacIntyre, the Chief Hearing Examiner; 9) Dorina L. Varner, the Chief Grievance Officer; 10) Lawrence P. Mahally, a deputy superintendent; 11) Peter Cwalina, a captain; 12) David Mosier, a lieutenant; 13) Robin Lucas, the Superintendent's Assistant and Facility Grievance Coordinator; and 14) Tami Santarelli, a correctional officer.[1]

---

1.  The second amended complaint named as defendants only these fourteen individuals.  It also mentioned, however, other individuals that allegedly violated the plaintiff's rights and that were named as defendants in the plaintiff's original complaint or first amended complaint.  But the plaintiff's failure to name those other individuals as defendants in his second amended complaint was intentional. *See Doc*. 57 at 7.  The plaintiff asserted that he removed those individuals as defendants because at the time he filed his second amended complaint he had not yet exhausted his administrative remedies as to the claims against those individuals.

(continued...)

The second amended complaint contained claims relating to the plaintiff's medical care, to the conditions of his confinement, to misconducts and misconduct hearings, to a cell search, and to the confiscation of property.

The defendants filed motions to dismiss the second amended complaint.  By a Report and Recommendation, we recommended that the motions to dismiss be granted as to all but two of the plaintiff's claims and that the plaintiff be granted leave to file a third amended complaint.

We recommended that the plaintiff's medical malpractice claims be dismissed because the plaintiff failed to file certificates of merit.  We also recommended that all of the plaintiff's Eighth Amendment medical claims be dismissed. Given the plaintiff's allegations that he was seen at sick call more than 100 times and that he was examined by defendant Bohinski at least once, we determined that most of the plaintiff's medical claims amount to nothing more than a

---

1.  (...continued)
*Id.*

disagreement with the care that he received.  Thus, we determined, leave to amend would be futile except as to a claim that defendant Pieczynski poured his medication on the ground and a claim regarding the denial of antifungal cream.  We recommended that the plaintiff be granted leave to amend only as to those two Eighth Amendment medical claims.

We recommended that the plaintiff's Eighth Amendment claims regarding the administration of a vaccine and his medical care for the effects of the vaccine be dismissed without leave to amend.  But, given the plaintiff's allegations that defendant Pieczynski forced him to take the vaccine, which was not mandatory, we determined that the second amended complaint stated a due process claim against defendant Pieczynski based upon the administration of the vaccine.

We recommended that the plaintiff's Eighth Amendment claim based on being forced to stand all day and all night in one position while in an infirmary cell be dismissed but that the plaintiff be granted leave to amend as to that claim.

We recommended that plaintiff's Fourth Amendment claim, access-to-the-courts claim, due process claim, retaliation claim, and Eighth Amendment claim based on a cell search and confiscation of property be dismissed.  We determined that leave to amend would be futile as to the Fourth Amendment claim, the due process claim, and that Eighth Amendment claim. But we recommended that the plaintiff be granted leave to amend as to the access-to-the-courts claim and the retaliation claim. We also recommended that the claim that defendants Cwalina, Mosier, and Lucas conspired to cover up the purportedly illegal cell search be dismissed without leave to amend.

We recommended that the due process claims with respect to disciplinary proceedings be dismissed but that the plaintiff be granted leave to amend as to those claims.

We determined that the second amended complaint stated a retaliation claim against defendant Pieczynski based on the issuance of a misconduct.  We determined that the second amended complaint failed to state retaliation claims based on the issuance of misconducts by defendant Santarelli and nurse

Harrison, but we recommended that the plaintiff be granted leave to amend as to those claims.

We recommended that the plaintiff's Eighth Amendment claim based on the conditions of confinement in the Restricted Housing Unit be dismissed, but we recommend that the plaintiff be granted leave to amend as to those claims.

We also recommended that the plaintiff's defamation claim be dismissed without leave to amend.

In the Report and Recommendation, we noted that the plaintiff should be granted leave to amend only as set forth above and that a third amended complaint should not add new defendants or new claims.  Judge Caputo adopted the Report and Recommendation, but, in addition to granting the plaintiff leave to amend as recommended in the Report and Recommendation, he also granted the plaintiff leave to amend as to the claim against defendants Cwalina, Mosier, and Lucas for conspiracy to cover up the cell search.

B. The Third Amended Complaint.

In January of 2012, the plaintiff filed a third amended complaint. The third amended complaint names the following individuals as defendants: 1) Lieutenant David Mosier; 2) Registered Nurse Jackie Chakan; 3) Grievance Coordinator Robin Lucas; 4) Licensed Practical Nurse Shannon Pieczynski; 5) Hearing Examiner Charles McKeown; 6) Corrections Officer Tami Santarelli 7) Registered Nurse Renee Waligun; 8) Registered Nurse Supervisor Joyce Wilson; 9) Acting Superintendent Jerome Walsh; 10) Chief Hearing Examiner Robert MacIntyre; 11) Registered Nurse Leslie Harrison; 12) Corrections Healthcare Administrator Myron Stanishefski; 13) Licensed Practical Nurse Lea Matysik; 14) Deputy Superintendent Lawrence Mahally; 15) Licensed Practical Nurse Jackie Vital; 16) Physician's Assistant Cheryl Bunk; 17) Certified Registered Nurse Practitioner Joseph Purcell; 18) Registered Nurse Supervisor Lea Liput; 19) Chief Grievance Officer Dorina Varner; 20) Former Superintendent Michael Klopotoski; 21) Medical Director Stanley Bohinski; 22) Licensed

Practical Nurse Danielle Frace; 23) Registered Nurse Supervisor Thomas Leskowsky and 24) Captain Peter Cwalina.[2]

The factual allegations of the third amended complaint are divided into nine parts which the plaintiff labels as a Facts Pt. #1 through Facts Pt. #9.  We summarize the plaintiff's allegations and claims as to each part.

1. Facts Pt. #1.

Part One of the third amended complaint concerns the denial of medication.  The plaintiff alleges the following facts.

The plaintiff had a rash that started on his chest, face, elbows, arms, and neck.  The rash eventually spread to his buttocks, thighs, and genitals.  But before the rash had spread to the plaintiff's lower extremities, defendant Bohinski

---

2.  Although not named in the list of defendants near the beginning of the third amended complaint, the plaintiff refers to Captain Cwalina as a defendant elsewhere in the third amended complaint. We assume that the plaintiff did not intend to drop defendant Cwalina from the case.

knew about the plaintiff's skin condition.  The plaintiff had brought his skin condition to defendant Bohinski's attention in January, February, and March of 2010.  He suffered unbearable itching, and defendant Bohinski denied his requests for treatment.

After examining the plaintiff, on April 3, 2010, Dr. Gustis prescribed an antifungal cream for the rash for two weeks and Zantac for the plaintiff's severe stomach pains for thirty days.  Nurses Vital, Harrison, Pieczynski, Roberts, Timothy, and Williams denied the plaintiff the antifungal cream from April 3, 2010 to April 12, 2010.  The plaintiff received the cream on only one occasion on April 5, 2010.[3]

On April 7, 2010, the plaintiff filed a grievance about not receiving the cream.  Defendant Leskowsky, the grievance officer, denied the grievance.  He stated that the medical administration records indicate that the nurses had administered the medication.  According to the plaintiff, this

---

3.  The plaintiff does not describe the process by which he received or was to receive the cream.  We assume from his allegations that the process involved a nurse's daily provision of a daily amount of the cream to him for him to himself apply in his cell.

shows that his medical chart is unreliable and that the nurses fabricated and entered false information on his chart.

On April 11, 2010, the plaintiff told defendant Bohinski that he was not receiving the antifungal cream from the nurses and that his rash was spreading.  Defendant Bohinski said that the cream had been received just the prior night, and he showed the plaintiff a paper to that effect.  Defendant Bohinski failed to put anything in the plaintiff's medical chart directing the nurses to make sure that the plaintiff would receive the cream on a daily basis.

When the plaintiff was transferred to the Allegheny County Jail on April 13, 2010, SCI-Dallas failed to list the antifungal cream on the plaintiff's medical transfer sheet.  As a result, the plaintiff did not receive the cream during the seven days he was at the Allegheny County Jail.

On April 11, 2010, prior to being transferred to the Allegheny County Jail, the plaintiff wrote a request slip to defendant Stanishefski about not receiving the cream.  On April 19, 2010, defendant Stanishefski ordered that the plaintiff be

10

examined.  When he returned from the Allegheny County Jail, defendant Bunk examined the plaintiff, stated that the bumps looked dry and that he does not need any cream, and directed him to use warm compresses on the affected areas.

The plaintiff received the cream on only one occasion. He suffered severe itching that he describes as unbearable.  He also suffered severe sharp stomach pains.  The rash left permanent marks.  He alleges that he was in unbearable pain.

The plaintiff alleges that the defendants knew that he would suffer without the antifungal cream.  He claims that defendants Vital, Pieczynski, Matysik, Harrison, Bohinski, Leskowsky, Bunk, Stanishefski, Williams, and Timothy violated the Eighth Amendment.

2. Facts Pt. #2.

Part Two of the third amended complaint concerns the plaintiff's placement and stay in a cell in the infirmary.  The plaintiff alleges the following facts.

On September 1, 2010, the plaintiff was on a hunger strike.  Defendants Bohinski and Liput ordered the plaintiff admitted to the infirmary.  Before he was placed in a cell, defendant Chakan placed an intravenous (IV) needle in the plaintiff's left arm.  The plaintiff was then placed in the cell and nurse Chakan ordered that the IV equipment be placed outside the cell door.

The cell contained a concrete bed but no mattress or pillow.  The plaintiff asked corrections officer Day for a mattress and pillow, and Day responded that he would get the plaintiff everything after he completed the paperwork.  A short time later, the plaintiff asked defendant Liput for a mattress and pillow.  Defendant Liput responded that she would let the guards know that the plaintiff needed a mattress.  Defendant Liput then told the plaintiff to eat and she walked away. Later the plaintiff asked defendants Waligun and Wilson if he could get a mattress and pillow.  Defendant Wilson said that she would talk to defendant Bohinski.  The plaintiff did not receive a mattress, pillow, blanket, or sheets.  There was no security basis for him not to have a mattress, pillow, blanket,

or sheets or for the IV to have been placed outside the cell
door.

Because the IV equipment was outside of the cell door,
the plaintiff stood and slept in one position all day and all
night with his hand and arm outside of the cell door.  He was
forced to sleep by the cell door on the floor, which was dirty
and where insects were crawling, with his arm hanging out of
the wicket all night.  This caused him pain and emotional
distress.  The next day, defendant Chakan asked the plaintiff
if he had stood all day and night by the door, and the
plaintiff responded "Yes."   Defendant Chakan then told the
plaintiff that he should have gotten a bed.  She told the
plaintiff that if would again eat the IV would be removed.  The
plaintiff refused to eat.  Defendants Chakan and Wilson denied
the plaintiff his medication.

The plaintiff claims that defendants Waligun, Chakan,
Wilson, Bohinski, and Liput violated the Eighth Amendment.

3. Facts Pt. # 3.

Part Three of the third amended complaint concerns the
denial of medication.  The plaintiff alleges the following
facts.

The plaintiff suffers from hypertension that is not
well controlled.  Left untreated, hypertension can cause a
heart attack or a stroke and can damage organs.  The plaintiff
takes lisinopril for his hypertension.  Without this
medication, he suffers from headaches, migraines, and
dizziness.  The plaintiff also suffers from stomach pains.  He
gets sharp pain that shoots from his stomach to his rectal area
and to his testicles.  On a few occasions that pain has been so
severe that he collapsed to the ground.  He cannot eat certain
foods without experiencing acute pain.  Even without eating
these foods, however, he still suffers from severe stomach
problems.  He takes Zantac for his stomach pain.  Without this
medication, he has a burning sensation and throbbing in his
stomach.

14

In November of 2010, nurses, including nurses Harrison, Roberts, Pieczynski, Matysik, and Vital, denied the plaintiff his medication nineteen times.  They knew that he suffered from hypertension, and they knew the dangers of hypertension if left untreated.  They falsely marked his medical chart to indicate that he had received his medication.  He suffered migraines, headaches, and dizziness because he missed his medications.

On November 21, 2010, defendant Pieczynski was administering medication on the Restricted Housing Unit.  She poured the plaintiff's medication on the ground, said "oops," picked the medication off the ground, and put it in the medical box.  The plaintiff asked several times if he was going to get his medication.  Defendant Pieczynski did not respond.  A corrections officer, however, responded that a nurse on the second shift would bring the medication.  While walking away defendant Pieczynski and the officer were laughing.

The plaintiff did not receive his medication from either the first or second shift, and he suffered severe stomach pain, dizziness, and a mild headache as a result. Defendant Pieczynski knew that he would have headaches and

stomach pain without his medication on November 21, 2010.
Defendant Pieczynski fabricated a medical summary report
stating that the plaintiff had thrown his medication and cursed
at her.

Prior to the incident on November 21, 2010, the
plaintiff instructed his friend, who has his power of attorney,
to call the medical department and to write a letter to
defendant Leskowsky or defendant Bohinski about defendant
Pieczynski denying the plaintiff his medication earlier in
November.  Defendants Leskowsky and Bohinski did nothing.  But,
according to the plaintiff, defendant Pieczynski poured his
medication on the ground in retaliation for those complaints.
Defendant Pieczynski has a history and pattern of retaliating
against the plaintiff after the plaintiff complains about her
conduct.

The camera in the Restricted Housing Unit recorded
defendant Pieczynski throwing the plaintiff's medication on the
ground.  The plaintiff wrote a request slip to defendant
Leskowsky asking him to review camera footage of the incident.
He also filed a grievance against defendant Pieczynski.  In

16

response, defendant Leskowsky stated that the plaintiff had contrived the situation to harass defendant Pieczynski.

On November 23, 2010, after defendant Bohinski had examined the plaintiff, a guard handed defendant Bohinski a paper.  Defendant Bohinski then asked the plaintiff why his nurses say that he threw medication at them.  The plaintiff denied that he had done so, and he told defendant Bohinski that defendant Pieczynski had poured his medication on the ground and that he had filed a grievance about the incident.  Defendant Bohinski then told the guard to escort the plaintiff back to the Restricted Housing Unit.

Defendants Bohinski, Stanishefski, Leskowsky, and Walsh failed to review the video footage and failed to rectify the matter despite being aware of defendant Pieczynski's tactics and behavior toward the plaintiff.

The plaintiff claims that defendants Pieczynski, Vital, Matysik, Harrison, Bohinski, Leskowsky, and Walsh were deliberately indifferent to his serious medical needs.  He also claims retaliation.

17

4. Facts Pt. #4.

Part Four of the third amended complaint concerns a vaccine that the plaintiff received.  The plaintiff alleges a lack of treatment for the side effects caused by the vaccine. The plaintiff alleges the following facts.

On December 21, 2009, defendant Pieczynski was administering vaccines in the Restricted Housing Unit.  The plaintiff initially refused the vaccine.  But after defendant Pieczynski threatened to charge him with misconduct if he continued to refuse, the plaintiff took the vaccine.  A few days later, he started to experience symptoms including nausea, severe itching, rashes, hives, migraine headaches, chest pain, vomiting, diarrhea, and stomach pain.  He lost more than forty pounds after taking the vaccine.  The plaintiff signed up and went to sick call more than one hundred times.  But physician's assistant Bunk and nurse Purcell denied him serious treatment. Defendant Bohinski also denied him treatment.

In May of 2010, the plaintiff sent a request slip to defendant Stanishefski requesting to be sent to an outside hospital for further testing.  In the request slip, he explained that prior to the vaccine he had no complaints but that after the vaccine he started experiencing symptoms. Defendant Leskowsky responded on behalf of defendant Stanishefski.  Defendant Leskowsky claimed that he checked the plaintiff's medical records and that there was nothing in the plaintiff's chart indicating that he had received an injection on December 21, 2009 or that he had signed up for sick call regarding his symptoms.  Defendant Leskowsky accused the plaintiff of trying to harass and intimidate the nurses including defendant Pieczynski.  The plaintiff then wrote to defendant Leskowsky and told him to check and to preserve video footage from the camera on the Restricted Housing Unit which he asserted would show defendant Pieczynski administering the vaccine.  Defendant Leskowsky did not respond.

According to the plaintiff, the vaccine "wasn't mandatory, nor was it necessary."  Yet defendant Pieczynski did not have a consent form with her allowing inmates to agree to the vaccine.  In contrast, when the vaccine was given to

19

inmates in other housing units, the nurses had consent forms containing information about the vaccine and the possible side effects, and the inmates were allowed to elect whether to take the vaccine.  Defendant Pieczynski, however, forced the plaintiff to take the vaccine by threatening that if he did not he would be issued a misconduct and would receive more time in the Restricted Housing Unit.  Both defendant Pieczynski and defendant Bohinski were aware of the possible side effects of the vaccine.

The plaintiff claims that defendants Pieczynski and Bohinski were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  He also claims a denial of due process.

5. Facts Pt. #5.

Part Five of the third amended complaint concerns a cell search and confiscation of property.  The plaintiff alleges the following facts.

On April 28, 2010, defendant Mosier ordered corrections officers to search the plaintiff's cell.  The search was purportedly only a security cell inspection where officers are to check the windows, doors, sink, toilet, vents, desk, lights, and bed.  There was no reason for such an inspection since the plaintiff's cell had been inspected earlier that week.  The officers destroyed items of the plaintiff's personal property.  Among the items destroyed were legal materials including ten pages of the initial complaint in this case and two affidavits in support of the plaintiff's claim regarding the December 21, 2009 injection of the vaccine.  The officers also destroyed a state habeas corpus petition which the plaintiff had filed challenging the conditions of his confinement and claiming that prison officials denied him due process in connection with his disciplinary hearings.

Prior to the cell search, the plaintiff had informed defendant Pieczynski that he was going to pursue a civil action against her and that he had affidavits to prove that she had injected him with the vaccine.  The plaintiff believes that defendant Pieczynski informed defendant Mosier of the

affidavits and that defendant Mosier then ordered the cell search in order to confiscate the plaintiff's legal materials.

The plaintiff filed a grievance about the search, and he requested to have the video tape reviewed. Defendant Lucas processed the grievance and assigned defendant Cwalina as the grievance officer. Defendant Cwalina interviewed defendant Mosier about the search, and defendant Mosier told him that a security and safety inspection had been done and that only excessive trash had been thrown away. Defendant Cwalina refused to review the video footage, and he informed the plaintiff that a security and safety inspection had been done.

Defendant Mosier has a pattern and history of covering up illegal cell searches. Every time an inmate files a grievance against him, he states that a security and safety inspection was done and that excessive trash was thrown away. Defendant Cwalina knew that defendant Mosier was lying, but because they are coworkers defendant Cwalina covered up the illegal cell search. The plaintiff believes that defendant Cwalina conspired with defendant Mosier to cover up the illegal cell search.

22

The plaintiff sent multiple request slips to defendant Lucas asking why his grievance had not been answered. Defendant Lucas did not respond to his request slips.  But she accidently sent him a copy of an email that she had sent to defendant Cwalina.  That email read: "HI-CAPT-This grievance was approved for an extension; However, the extended response was due on July 9th 2010.  Would you please complete this grievance ASAP, so it can be removed from the tracking system." The plaintiff spoke to defendant Walsh about the email, and he said he would check into it.  Defendant Cwalina then responded to the grievance.

According to the plaintiff, defendants Cwalina and Lucas conspired to remove the grievance from the grievance tracking system.  He asserts that if he had not shown the email to defendant Walsh, his grievance would have been removed from the tracking system thus covering up the search.

The plaintiff claims that defendants Mosier, Cwalina, and Lucas conspired and retaliated against him and denied him due process and access to the courts.  He also claims that the defendants' actions constituted cruel and unusual punishment.

23

6. Facts Pt. #6.

Part Six of the third amended complaint concerns a misconduct.  The plaintiff alleges the following facts.

On September 9, 2010, nurse Harrison denied the plaintiff his medication, and the plaintiff filed a grievance about that denial.  On September 22, 2010, the plaintiff received a misconduct based on a report from nurse Harrison. This misconduct was in retaliation for his grievance against nurse Harrison.  At the disciplinary hearing, defendant McKeown dismissed the charges without prejudice.  The plaintiff then filed another grievance against nurse Harrison.  Although acknowledging that the misconduct had been incorrectly issued, defendant Leskowsky denied his grievance and denied him compensation.  He appealed to defendants Stanishefski, Walsh, and Varner, all of whom also denied him relief.

The plaintiff claims that defendant Harrison retaliated against him and that defendants Stanishefski, Leskowsky, Walsh,

and Varner retaliated against him and violated his due process
rights.

7. Facts Pt. #7.

Part seven of the third amended complaint concerns
another misconduct report and misconduct proceedings.  The
plaintiff alleges the following facts.

On August 15, 2009, defendant Santarelli was talking to
the plaintiff's cellmate.  She then stepped back from the cell
door and looked into cell #41 and then into cell #42.  She then
continued to do her rounds.  A short time later, she came back
and said something to somebody in cell #41.  Then she came to
cell #42 and stated: "You Guys think your slick?"  She walked
away.  Later, the plaintiff asked her what she meant by that
comment.  She responded by asking the plaintiff if that wasn't
him up there jerking off and if he wasn't jerking off the last
time she had worked this block.  The plaintiff responded that
it was not him.  Defendant Santarelli then stated that she
knows it is one of these cells, that she is not sure, but that

she is going to catch him.  As she walked off, the plaintiff asked for a grievance form and she said "No!"

Later, the plaintiff received a misconduct report charging him with four Class 1 violations.  The charges were based on a report by defendant Santarelli.  The misconduct report stated that the plaintiff had masturbated in front of defendant Santarelli and that after she told him to stop he made an inappropriate and threatening statement to her.

The plaintiff asserts that he received the misconduct because he had asked for a grievance form and because defendant Santarelli had mistakenly identified him.

At the disciplinary hearing on the misconduct, the plaintiff requested to call several witnesses.  Defendant McKeown denied that request, found the plaintiff guilty of the charges, and sanctioned him with 360 days disciplinary custody in the Restricted Housing Unit.  Defendants McKeown, Walsh, Klopotoski, and MacIntyre denied the plaintiff a written statement of the evidence relied on and the reasons for the disciplinary action taken.

The plaintiff was confined in the Restricted Housing Unit for 360 days without adequate lighting, food, bedding, and toilet facilities.  He was also without access to showers, yard, legal materials, the law library, medical and dental care, work or school details, contact visits, and telephone and commissary privileges.

In the Restricted Housing Unit, the plaintiff is subjected to bright lights for seventeen and one half hours a day, whereas in the general population he had control of the lights in his cell.

In the Restricted Housing Unit, the plaintiff is allowed only three ten-minute showers a week and he is frequently denied even those showers, whereas in the general population he could shower seven days a week.  In the Restricted Housing Unit, the showers have mold on the walls, rusty pipes, and chipped paint falling from the ceilings.

In the Restricted Housing Unit, the plaintiff is allowed to use the law library only once a week for two hours at a time and he has to wait a week or more to use the law

library, whereas in the general population he could use the law
library three times a week for two hours at a time without
waiting.

        In the Restricted Housing Unit, the plaintiff is
allowed one hour of outside recreation five times a week and
the guards deny him yard for personal reasons, whereas in the
general population he was allowed yard seven days a week for
two hours at a time.  In the Restricted Housing Unit, he is
served cold food on trays with bacteria and officers deny him
food trays, whereas in the general population he received two
hot meals and one cold meal a day on clean trays and he
received larger portions in the general population.

        In the Restricted Housing Unit he is subjected to poor
ventilation and was in the past subject to second hand smoke,
whereas in the general population he could open his cell window
and activate a fan.

        In the Restricted Housing Unit, the plaintiff is denied
dental and medical appointments and medications, whereas in the
general population inmates receive medical and dental care

including sick call services, medications, examinations, and treatments.

Inmates in the Restricted Housing Unit throw urine and feces in the air vents, in the exercise cages, in the showers, and on one another.  Defendant Mosier placed an inmate, who has HIV and is known for throwing urine and feces on others, in the cell in the Restricted Housing Unit next to the plaintiff's cell.  In the exercise cages, the plaintiff was also placed next to psychotic inmates who throw urine and feces.

Inmates in the Restricted Housing Unit flood the tier with toilet water that contains feces, and that flood water flowed into the plaintiff's cell.  In the Restricted Housing Unit, inmates bang on their cell doors, beds, and sinks and scream for days at time.

In the Restricted Housing Unit, guards call the plaintiff a sexual predator and a rapist.  He was restrained because guards falsely stated that he had threatened to kill himself.

Defendants Santarelli, McKeown, Walsh, and Klopotoski knew about the conditions in the Restricted Housing Unit while the plaintiff was confined there and knew that such conditions can cause psychological and physical harm.

The plaintiff claims that defendants Santarelli, McKeown, Walsh, Klopotoski, and MacIntyre violated his due process and Eighth Amendment rights.  He also claims that defendant Santarelli retaliated against him.

8. Facts Pt. #8.

Part Eight of the third amended complaint concerns another misconduct and misconduct proceedings.  The plaintiff alleges the following facts.

On June 5, 2010, corrections officer Wisinski was escorting defendant Pieczynski while she was administering medications in the Restricted Housing Unit.  Officer Wisinski opened the slot on the plaintiff's cell door and the plaintiff stuck his hand out of the slot to retrieve his medication.

Officer Wisinski then closed the slot, and he and defendant
Pieczynski walked away.  Later that day, the plaintiff received
a misconduct report charging him with two Class I violations
allegedly for masturbating.

Prior to this incident, the plaintiff had filed a
grievance claiming that defendant Pieczynski defamed his
character, harassed him, and filed fabricated misconduct
reports against him.  Defendant Leskowsky denied that
grievance.  Defendant Pieczynski filed the June 5th misconduct
against the plaintiff in retaliation because the plaintiff
filed a grievance against her.  She follows a pattern of filing
retaliatory misconducts against the plaintiff after the
plaintiff files grievances against her.

At his disciplinary hearing, the plaintiff requested
that the video tape of the incident be reviewed, but defendant
McKeown denied that request.  Defendant McKeown relied solely
on defendant Pieczynski's written report, which did not support
a finding of guilt.  Defendant McKeown found the plaintiff
guilty and sanctioned him with 180 days in the Restricted
Housing Unit.  He did not provide an adequate written statement

of the evidence relied upon and the reasons for the
disciplinary action taken.  All of the plaintiff's appeals were
denied, and defendants Mahally, Walsh, and MacIntyre also did
not provide the plaintiff with an adequate written statement of
the evidence relied on or a statement of why the video tape was
not reviewed.

In the Restricted Housing Unit, the plaintiff was
subjected to the same conditions as set forth previously.  He
lost forty pounds while in the Restricted Housing Unit.

Defendants Pieczynski, McKeown, Mahally, and Walsh knew
about the conditions in the Restricted Housing Unit prior to
imposing sanctions on the plaintiff and while the plaintiff was
confined there, and they knew that such conditions can cause
psychological and physical harm.

The plaintiff claims that defendants Pieczynski,
Leskowsky, McKeown, Mahally, Walsh, and MacIntyre violated his
due process and Eighth Amendment rights.  He also claims
retaliation.

9. Facts Pt. #9.

Part Nine of the third amended complaint concerns another misconduct and misconduct proceedings.  This misconduct was issued by defendant Frace.  The plaintiff claims that this misconduct was issued in retaliation for a prior grievance against defendant Frace.  He also claims that he was denied due process in connection with the misconduct proceedings.

The plaintiff is seeking declaratory and injunctive relief as well as monetary damages.

Defendants Walsh, Mahally, Lucas, Stanishefski, Leskowsky, Liput, Pieczynski, McKeown, MacIntyre, Cwalina, Mosier, and Santarelli[4] filed a motion to dismiss the third amended complaint or, in the alternative, for summary judgment. Defendant Bohinski filed a separate motion to dismiss the third amended complaint.  The motions have been briefed and are the subject of this Report and Recommendation.

---

4.  Defendants Walsh, Mahally, Lucas, Stanishefski, Leskowsky, Liput, Pieczynski, McKeown, MacIntyre, Cwalina, Mosier, and Santarelli refer to themselves as the corrections defendants, and we will refer to them as the corrections defendants as well.

II.  Motion to Dismiss and Summary Judgment Standards.

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) challenges the legal sufficiency of the plaintiff's complaint. In deciding a motion to dismiss the complaint, we must accept all well-pleaded factual allegations as true, "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *McTernan v. City of York,* 564 F.3d 636, 646 (3d Cir. 2009)(quoting *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  The statement required by Rule 8(a)(2) need only give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But more is required than

labels, conclusions and a formulaic recitation of the elements

of a cause of action. *Id.*  "In other words, a complaint must do

more than allege the plaintiff's entitlement to relief." *Fowler*

*v. UPMC Shadyside,* 578 F.3d 203, 211 (3d Cir. 2009).  "A

complaint has to "show" such an entitlement with its facts."

*Id.*  "While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations."

*Ashcroft, supra,* 129 S.Ct. at 1950.  "When there are well-

pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to

an entitlement to relief." *Id.*


"To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'" *Ashcroft,*

*supra,* 129 S.Ct. at 1949 (quoting *Twombly*, *supra,* 550 U.S. at

570).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged." *Id.*  "The plausibility standard is not

akin to a 'probability requirement,' but it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Id.*

But "a complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer,* 131 S.Ct. 1289, 1296 (2011).  Rule 8(a)(2) "requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Id.*  The factual detail necessary to satisfy the standard will vary depending on the case. *In re Insurance Brokerage Antitrust Litigation,* 618 F.3d 300, 320 n.18 (3d Cir. 2010).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson, supra,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

"'Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.'" *The Circle School v. Pappert*, 381 F.3d 172, 177 (3d Cir. 2004)(quoting *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 441 n.3 (3d Cir. 2000)).

III.  Discussion.

The plaintiff was granted leave to filed a third amended complaint.  We specifically noted, however, in the Report and Recommendation that the plaintiff should be granted leave to amend only as set forth above and that a third amended complaint should not add new defendants or new claims. Judge Caputo adopted that recommendation when he ordered that the plaintiff may file an amended complaint "in accordance with Magistrate Judge Smyser's Report and Recommendation" with the exception of also granting leave as to the conspiracy claim.

Despite the limitation that the plaintiff not add new defendants or new claims, the third amended complaint adds ten new defendants and one entirely new claim.  We recommend that those defendants and that claim be dismissed because they exceed the scope of the leave granted to the plaintiff to amend.  Thus, we recommend that defendants Chakan, Waligun, Wilson, Harrison, Matysik, Vital, Bunk, Purcell, Klopotoski,

and Frace be dismissed and that the claim in Part Nine of the third amended complaint be dismissed.

The third amended complaint also contains claims that have already been dismissed without leave to amend.  The plaintiff claims that defendants Bohinski and Pieczynski violated the Eighth Amendment in connection with the administration of the vaccine and the alleged failure to treat the side effects caused by the vaccine.  The plaintiff claims that the cell search and destruction of his property violated his due process and Eighth Amendment rights.  These claims were dismissed from the second amended complaint without leave to amend.  We recommend that they be dismissed from the third amended complaint because the plaintiff did not have leave to amend as to those claims.

A. Eighth Amendment Medical Claims.

There are two remaining Eighth Amendment medical claims: the claim based on the denial of antifungal cream and

the claim based on defendant Pieczynski throwing the plaintiff's medication on the ground.

"[T]he Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  In order for the plaintiff to state a viable Eighth Amendment medical care claim, he must allege facts from which it can reasonably be inferred that the defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976).

The concept of a serious medical need in Eighth Amendment jurisprudence has two components, one relating to the consequences of a failure to treat and the other relating to the obviousness of those consequences. *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991).  The condition must be such that a failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death. *Id*.  Also, the condition must be one that has been diagnosed by a doctor as requiring treatment or one that is so obvious

that a lay person would easily recognize the need for a doctor's attention. *Id.*

Deliberate indifference is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 840 (1994). "To act with deliberate indifference to serious medical needs is to recklessly disregard a substantial risk of serious harm." *Giles v. Kearney,* 571 F.3d 318, 330 (3d Cir. 2009). To act with deliberate indifference, the prison official must have known of the substantial risk of serious harm and must have disregarded that risk by failing to take reasonable measures to abate it. *Farmer, supra,* 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

"It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle, supra,* 429 U.S. at

40

106.   "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

Prison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates.  Courts will "disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment." *Little v. Lycoming County*, 912 F.Supp. 809, 815 (M.D.Pa. 1996)(quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).  Mere disagreement as to the proper medical treatment does not support an Eighth Amendment claim. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . . Nor does mere disagreement as to the proper medical treatment support a claim of an eighth

41

amendment violation."); *White*, *supra,* 897 F.2d at 110 (mere disagreement over proper treatment does not state a claim upon which relief can be granted).

A prison official is not deliberately indifferent simply because he or she failed to respond to a prisoner's medical complaints when the prisoner was already being treated by a prison doctor. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

1. Denial of Antifungal Cream.

The plaintiff claims that he was denied antifungal cream in violation of the Eighth Amendment.

Defendant Bohinski contends that a rash is not a serious medical need.  We agree that a rash is generally not a serious medical need.  But in this case the plaintiff alleges that he suffered severe itching and pain and that a doctor prescribed an antifungal cream for the rash.  A fact finder could reasonably infer a serious medical need.

We conclude, however, that the plaintiff has failed to allege facts from which it can reasonably be inferred that the defendants were deliberately indifferent to his serious medical needs.

As to defendant Pieczynski, the plaintiff alleges that she denied him the cream on two occasions.  He alleges that the defendants knew that he would suffer without the cream. That is an allegation of his opinion, but there are not facts alleged to support the inference that this was the defendants' state of mind.  He has not alleged facts from which it can reasonably be inferred that defendant Pieczynski knew that he would suffer without two doses of the cream.  Accordingly, the third amended complaint fails to state a claim upon which

relief can be granted against defendant Pieczynski based on
denial of the cream.

The plaintiff alleges that he talked to defendant
Bohinski on April 11, 2010 about not receiving the cream and
that defendant Bohinski indicated that the cream had just come
in.  He faults defendant Bohinski for not putting anything in
the plaintiff's medical chart directing the nurses to make
sure that the plaintiff would receive the cream.  But that is
at most negligence.  It does not lead to a reasonable
inference of deliberate indifference.  Accordingly, the third
amended complaint fails to state a claim upon which relief can
be granted against defendant Bohinski based on a denial of the
cream.

The plaintiff wrote a request slip to defendant
Stanishefski about not receiving the cream, and defendant
Stanishefski ordered that the plaintiff be examined.  Given
that he ordered that the plaintiff be examined, defendant
Stanishefski cannot be seen to have been deliberately
indifferent to the plaintiff's serious medical needs.  Nor can
defendant Leskowsky be so seen based on his response to the

plaintiff's grievance.  Accordingly, the third amended
complaint fails to state a claim upon which relief can be
granted against defendants Stanishefski and Leskowsky based on
denial of the cream.


2. Pouring Medication on the Ground.


The plaintiff alleges that, on November 21, 2010,
defendant Pieczynski poured his medication on the ground.  As
a result, he alleges, he did not receive his medication and he
suffered severe stomach pain, dizziness, and a mild headache
as a result.  Although the plaintiff alleges that defendant
Pieczynski knew that he would have headaches and stomach pain
without his medication, he has not alleged facts to support
this statement of his opinion.  Accordingly, we conclude that
the third amended complaint fails to state an Eighth Amendment
claim against defendant Pieczynski upon which relief can be
granted based on her throwing the plaintiff's medication on
the ground.

Further, there is no reasonable basis to conclude that defendants Bohinski, Leskowsky, and Walsh were deliberately indifferent to the plaintiff's serious medical needs based on anything that they did or did not do upon the plaintiff's after-the-fact complaints to them about defendant Pieczynski throwing the medication on the ground.  Accordingly, the third amended complaint fails to state an Eighth Amendment claim against them upon which relief can be granted based on defendant Pieczynski throwing the plaintiff's medication on the ground.

B. Due Process Vaccine Claim.

We concluded that the second amended complaint stated a due process claim upon which relief can be granted against defendant Pieczynski based on the administration of the vaccine.  The plaintiff included that claim in his third amended complaint.  Defendant Pieczynski seeks summary judgment as to that claim on the basis that the plaintiff procedurally defaulted the claim during administrative proceedings.

42 U.S.C. § 1997e(a), provides:

No action shall be brought with respect
to prison conditions under section 1983 of
this title, or any other Federal law, by a
prisoner confined in any jail, prison, or
other correctional facility until such
administrative remedies as are available are
exhausted.

In accordance with Section 1997e(a), the exhaustion of
available administrative remedies is mandatory. *Booth v.
Churner*, 532 U.S. 731, 739 (2001). The "exhaustion
requirement applies to all inmate suits about prison life,
whether they involve general circumstances or particular
episodes, and whether they allege excessive force or some
other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). A
prisoner must "exhaust all available administrative remedies"
regardless of whether the administrative process may provide
the prisoner with the relief that he is seeking. *Nyhuis v.
Reno*, 204 F.3d 65, 75 (3d Cir. 2000). "[C]ompliance with the
administrative remedy scheme will be satisfactory if it is
substantial." *Id.* at 77. Failure to exhaust available
administrative remedies is an affirmative defense. *Jones v.
Bock,* 549 U.S. 199, 216 (2007). As an affirmative defense,
the failure to exhaust available administrative remedies must

47

be pleaded and proven by the defendants. *Brown v. Croak*, 312
F.3d 109, 111 (3d  Cir. 2002).

42 U.S.C. § 1997e(a) requires proper exhaustion.
*Woodford v. Ngo,* 548 U.S. 81 (2006).  In other words,
§ 1997e(a) requires more than simple exhaustion, i.e., more
than that there is no further process available to the inmate
within the grievance system. *Spruill v. Gillis*, 372 F.3d 218,
227-31 (3d Cir. 2004).  Section 1997e(a) requires that an
inmate follow the procedural requirements set forth in the
administrative remedy process that is available to him. *Id. at
231.*  The prison grievance procedures supply the yardstick for
measuring whether exhaustion was proper. *Id. See also Jones,
supra,* 549 U.S. at 218 ("The level of detail necessary in a
grievance to comply with the grievance procedures will vary
from system to system and claim to claim, but it is the
prison's requirements, and not the PLRA, that define the
boundaries of proper exhaustion.").  "'[T]he primary purpose
of a grievance is to alert prison officials to a problem, not
to provide personal notice to a particular official that he
may be sued.'" *Williams v. Beard,* 482 F.3d 637, 640 (3d Cir.
2007)(quoting *Jones, supra,* 549 U.S. at 219).

48

The Pennsylvania Department of Corrections has implemented an official Inmate Grievance System.  The grievance system is governed by Administrative Directive 804 (DC-ADM 804).  DC-ADM 804 sets forth a three-tier administrative remedy system.  Pursuant to DC-ADM 804, an inmate is required to present his grievance to the Facility Grievance Coordinator for initial review within fifteen days after the events upon which the grievance is based.  The inmate is required to appeal an adverse determination by the Facility Grievance Coordinator to the Facility Manager.  From there the inmate must appeal to the Secretary's Office of Inmate Grievances and Appeals.

Defendant Pieczynski has presented evidence that the plaintiff filed two grievances about the administration of the vaccine but that both of those grievances were rejected as untimely.  The plaintiff contends that the grievances were not untimely because he did not earlier know what type of vaccine the defendant had administered to him.  That argument is without merit because whether the plaintiff's due process rights were violated by being forced to take a vaccine against

49

his will does not depend upon what specific type of vaccine was administered.  Further, the plaintiff's assertion that his failure to timely file a grievance should be excused because he signed up for sick call is also without merit.

The plaintiff also contends that he did file a timely grievance complaining about the symptoms of the vaccine. Citing Fed.R.Civ.P. 56(f), he contends that he cannot access his property to obtain his evidence.  But, after he wrote his brief he apparently was able to access his property because he did in fact submit a copy of the grievance. *See Doc. 113* at 7-8. In that grievance, he complains about not receiving medical care.  That grievance cannot reasonably be construed as raising a claim that defendant Pieczynski forced him to take the vaccine without his consent in violation of his due process rights.

The plaintiff procedurally defaulted his due process claim against defendant Pieczynski by failing to file a timely grievance about being forced to take the vaccine. Accordingly, defendant Pieczynski is entitled to summary judgment as to that claim.

50

C. Conditions of Confinement.

The plaintiff presents two conditions of confinement claims: one with respect to his stay, on September 1, 2010, in the infirmary cell and the other with respect to his stay in the Restricted Housing Unit.

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Unnecessary and wanton inflictions of pain include those that are totally without penological justification. *Hope v. Pelzer*, 536 U.S. 730, 737 (2002). Conditions which inflict needless suffering, whether physical or mental, may constitute cruel and unusual punishment. *Tillery v. Owens*, 719 F.Supp. 1256, 1275 (W.D. Pa. 1989), *aff'd*, 907 F.2d 418 (3d Cir. 1990).

An Eighth Amendment claim gives rise to a two-prong analysis. Eighth Amendment claims must satisfy both an objective component (the deprivation must be sufficiently

serious) and a subjective component (the defendant must have been deliberately indifferent). *Young v. Quinlan*, 960 F.2d 351, 359-60 (3d Cir. 1992).  As to the objective component, the Eighth Amendment is violated only when an inmate is deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

As to the subjective component, the question is whether the prison official acted with deliberate indifference to the inmate's health or safety. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).  "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  "We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious." *Hope, supra,* 536 U.S. at 738.

The length of time a prisoner is subjected to harsh conditions is a critical factor in an Eighth Amendment analysis. *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir.

1996)("Conditions such as a filthy cell that may be tolerable for a few days are intolerably cruel for weeks or months."). *See also Hutto v. Finney*, 437 U.S. 678, (1978)("[T]he length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards.").

In addressing an Eighth Amendment conditions-of-confinement claim, the Supreme Court has stated that the Constitution does not mandate comfortable prisons. *Wilson v. Seiter,* 501 U.S. 294, 298 (1991).  Conditions which are not cruel and unusual are constitutional. *Rhodes*, *supra,* 452 U.S. at 347 (1981).  "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id*.

1. Infirmary Cell.

The plaintiff alleges, that on September 1, 2010, he was on a hunger strike and defendants Bohinski and Liput ordered him admitted to the infirmary.  He alleges that a

nurse placed an IV in him and then ordered that the IV equipment be placed outside the cell door.  As result, he alleges that he stood and slept in one position all day and all night with his hand and arm outside of the cell door.  He alleges that he was forced to sleep by the cell door on the floor, which was dirty and where insects were crawling, with his arm hanging out of the wicket all night.  This caused him pain and emotional distress.

Forcing a prisoner to stand in one position for a lengthy period of time may violate the Eighth Amendment.  But the plaintiff has not pleaded any facts from which it can reasonably be inferred that defendants Bohinski or Liput forced the plaintiff to stay in one position or knew that he was forced to stay in one position.  And so he has failed to allege facts from which it can reasonably be inferred that they were deliberately indifferent to a substantial risk of serious harm.

The plaintiff also alleges that he was denied a mattress, pillow, blanket, and sheets for a day and night.  Again, he has not alleged facts from which it can reasonably

be inferred that defendants Bohinski and Liput knew that he was denied bedding.  Moreover, being denied bedding for one day and one night is not a sufficiently serious deprivation to satisfy the objective component of an Eighth Amendment violation. *See Adderly v. Ferrier,* 419 Fed.Appx. 135, 139-140 (3d Cir. 2011)(holding that, although harsh, the deprivation of a mattress and pillow among other things for seven days is not an Eighth Amendment violation).

The third amended complaint fails to state an Eighth Amendment claim upon which relief can be granted against defendants Bohinski and Liput based on the conditions in the infirmary cell.

2.  Restricted Housing Unit.

The plaintiff alleges that he was confined in the Restricted Housing Unit under harsh conditions including the following: bright lights for seventeen and one half hours a day; limited showers; shower facilities that have mold on the walls, rusty pipes, and chipped paint falling from the

55

ceilings; limited exercise; cold food; denial of meal trays; poor ventilation; denial of dental and medical appointments and medications; inmates who throw urine and feces in the air vents, in the exercise cages, in the showers, and on one another; flooding of the tier and his cell with toilet water that contains feces; and near constant banging and yelling. The plaintiff has sufficiently alleged facts from which it could reasonably be inferred that he was denied the minimal civilized measure of life's necessities.

He also alleged facts from which it could reasonably be inferred that the defendants were deliberately indifferent to his health and safety.  He alleges that defendants Santarelli, Pieczynski, McKeown, Mahally, Walsh, and MacIntyre knew about the conditions in the Restricted Housing Unit while the plaintiff was confined there and knew that such conditions can cause psychological and physical harm.  Accordingly, we conclude that the third amended complaint states an Eighth Amendment claim upon which relief can be granted against defendants Santarelli, Pieczynski, McKeown, Mahally, Walsh, and MacIntyre based on the conditions in the Restricted Housing Unit.

D.   Cell Search and Confiscation of Property.

The plaintiff alleges that defendant Mosier ordered corrections officers to search his cell and that during the search the officers destroyed items of his personal property including legal materials.  He alleges that the cell search was done for the purpose of intimidating and harassing him because he filed civil actions against prison officials.  He alleges that defendants Cwalina, Mosier, and Lucas conspired to cover up the illegal cell search.

1.  Access to the Courts.

Because the plaintiff alleges that some of the property confiscated during the search was legal material, we construe the third amended complaint as raising a claim of a denial of the right of access to the courts.

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard,* 536

F.3d 198, 205 (3d Cir. 2008).  "Whether an access claim turns
on a litigating opportunity yet to be gained or an opportunity
already lost, the very point of recognizing any access claim
is to provide some effective vindication for a separate and
distinct right to seek judicial relief for some wrong."
*Christopher v. Harbury*, 536 U.S. 403, 414-415 (2002).  The
right of access to the courts "is ancillary to the underlying
claim, without which a plaintiff cannot have suffered injury
by being shut out of court." *Id.* at 415.  Therefore, a
plaintiff must allege an actual injury by identifying a
nonfrivolous, arguable underlying claim blocked or lost by the
alleged denial of access to the courts. *Id.*  The underlying
cause of action, whether anticipated or lost, is an element of
the access claim. *Id.*  Like any other element, the underlying
cause of action "must be addressed by allegations in the
complaint sufficient to give fair notice to a defendant." *Id.*
at 416.  In the prison setting, actual injury is the loss of a
non-frivolous claim that relates to a challenge, direct or
collateral, to an inmate's conviction or relates to a
challenge to the conditions of confinement. *Lewis v. Casey*,
518 U.S. 343, 351-54 (1996).

The plaintiff alleges that the guards confiscated legal materials including ten pages of the initial complaint in this case and two affidavits prepared to support his claims in this case regarding the administration of the vaccine.  The plaintiff has failed to allege facts from which it could reasonably be inferred that he suffered an actual injury by losing a non-frivolous claim.  He has been able to pursue this case.  And, as set forth above, defendant Pieczynski is entitled to summary judgment as to the due process vaccine claim.

The plaintiff also alleges that the guards confiscated a state habeas corpus petition challenging the conditions of his confinement and claiming that prison officials denied him due process in connection with his disciplinary hearings.  In the third amended complaint, he alleges that he had filed the petition in state court.  In his brief, however, he asserts that what was confiscated was an amended petition that he intended to file but that had not yet been filed.  The plaintiff, however, has not alleged facts from which it can reasonably be inferred that the state habeas corpus petition

was not frivolous.  Accordingly, he has not alleged an actual
injury to his right of access to the courts.

Because the plaintiff has not alleged an actual
injury, the third amended complaint fails to state a claim of
a denial of access to the courts upon which relief may be
granted.

2. Retaliation.

The plaintiff claims that the cell search was done for
the purpose of intimidating and harassing him because he filed
civil actions against prison officials.

A prisoner claiming that a defendant has retaliated
against him for exercising his constitutional rights must
allege facts from which it can reasonably be inferred that:
1) his conduct was constitutionally protected; 2) he suffered
"adverse action" at the hands of the defendant; and 3) his
constitutionally-protected conduct was a substantial or

motivating factor in the decision of the defendant. *Carter v. McGrady,* 292 F.3d 152, 158 (3d Cir. 2002).

The plaintiff has sufficiently alleged the first two elements of a retaliation claim.  Filing grievances and civil actions against prison officials is protected conduct and a cell search and confiscation of property could reasonably be viewed as an adverse action.

As to the third element, the plaintiff alleges that, prior to the cell search, he had informed defendant Pieczynski that he was going to pursue a civil action against her and that he had affidavits to prove that she had injected him with the vaccine.  The plaintiff believes that defendant Pieczynski informed defendant Mosier of the affidavits and that defendant Mosier then ordered the cell search in order to confiscate the plaintiff's legal materials.  But the plaintiff has not alleged any facts to support his belief that defendant Pieczynski told defendant Mosier about the affidavits or that defendant Mosier ordered the search in order to confiscate his legal materials.  Conclusory allegations of retaliation are not sufficient to state a claim upon which relief can be

granted. *See Fortune v. Bitner,* 285 Fed.Appx. 947, 949 (3d
Cir. 2008).  Because the plaintiff has not alleged facts which
could reasonably support a causal link between his filing of
the civil actions and the cell search and property
confiscation, the third amended complaint fails to state a
retaliation claim upon which relief can be granted based on
the cell search and property confiscation.


    3.   Conspiracy.


    The plaintiff claims that defendants Cwalina, Mosier,
and Lucas conspired to cover up the illegal cell search.  He
alleges that he filed a grievance about the search, and he
requested to have the video tape reviewed.  Defendant Lucas
processed the grievance and assigned defendant Cwalina as the
grievance officer.  Defendant Cwalina interviewed defendant
Mosier about the search, and defendant Mosier told him that a
security and safety inspection had been done and that only
excessive trash had been thrown away.  Defendant Cwalina
refused to review the video footage, and he informed the
plaintiff that a security and safety inspection had been done.

The plaintiff alleges that defendant Mosier has a pattern and history of covering up illegal cell searches. Every time an inmate files a grievance against him, he states that a security and safety inspection was done and that excessive trash was thrown away.  The plaintiff alleges that defendant Cwalina knew that defendant Mosier was lying, but because they are coworkers defendant Cwalina covered up the illegal cell search.  The plaintiff believes that defendant Cwalina conspired with defendant Mosier to cover up the illegal cell search.

The plaintiff sent multiple request slips to defendant Lucas asking why his grievance had not been answered. Defendant Lucas did not respond to his request slips.  But she accidently sent him a copy of an email that she had sent to defendant Cwalina.  That email read: "HI-CAPT-This grievance was approved for an extension; However, the extended response was due on July 9th 2010.  Would you please complete this grievance ASAP, so it can be removed from the tracking system."  The plaintiff spoke to defendant Walsh about the email, and he said he would check into it.  Defendant Cwalina then responded to the grievance.  According to the plaintiff,

defendants Cwalina and Lucas conspired to remove the grievance from the grievance tracking system.  He asserts that if he had not shown the email to defendant Walsh, his grievance would have been removed from the tracking system thus covering up the search.

"The essence of a conspiracy is an agreement." *United States v. Kelly,* 892 F.2d 255, 258 (3d Cir. 1989).  To state a conspiracy claim under 42 U.S.C. § 1983 upon which relief can be granted, a plaintiff must allege "facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 178 (3d Cir. 2010).  "To properly plead such an agreement, 'a bare assertion of conspiracy will not suffice.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

There are no allegations in the third amended complaint from which it can reasonably be inferred that defendants Mosier and Lucas entered into an agreement to cover up the search.  As to defendants Mosier and Cwalina, the plaintiff alleges that Cwalina knew that Mosier was lying, but because they are coworkers Cwalina covered up the illegal cell

search.  But the plaintiff has not alleged any facts from which it can reasonably be inferred that defendant Cwalina knew that defendant Mosier was lying.  And his assertion of a conspiracy between defendants Mosier and Cwalina is merely a conclusion.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft, supra,* 129 S.Ct. at 1950.

The allegations of a conspiracy between defendant Cwalina and defendant Lucas in the third amended complaint are substantially similar to the allegations in the second amended complaint, which allegations the court has already determined fail to state a claim upon which relief can be granted.  The crux of the conspiracy claim is the email from defendant Lucas to defendant Cwalina.  A reasonable inference from this email is that defendant Lucas was asking defendant Cwalina to complete his response to the grievance.  Moreover, the plaintiff alleges that after he showed the email to defendant Walsh, defendant Cwalina responded to the grievance.  The email cannot reasonably be seen to support an inference that defendants Lucas and Cwalina conspired to cover up the search. Accordingly, the third amended complaint fails to state a

conspiracy claim upon which relief can be granted against
defendant Lucas or defendant Cwalina.


E.  Misconducts and Misconduct Hearings.


The plaintiff complains about misconduct charges that
he received and the hearings on those misconduct charges.


1. Due Process.


The Fourteenth Amendment provides that a state shall
not "deprive any person of life, liberty, or property, without
due process of law."  A due process claim requires a two-part
analysis.  First, the court must determine whether the
interest asserted by the plaintiff is within the scope of
protection of life, liberty, or property found in the Due
Process Clause. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir.
2000).  Second, if the interest is one that is protected by
the Due Process Clause, "the question then becomes what
process is due to protect it." *Id.*

In *Sandin v. Conner*, 515 U.S. 472 (1995), the United

States Supreme Court, addressing the question of when the

state can create liberty interests protected by the Due

Process Clause, held that:

> States may under certain circumstances create
> liberty interests which are protected by the
> Due Process Clause.  But these interests will
> be generally limited to freedom from restraint
> which, while not exceeding the sentence in
> such an unexpected manner as to give rise to
> protection by the Due Process Clause of its
> own force, nonetheless imposes atypical and
> significant hardship on the inmate in relation
> to the ordinary incidents of prison life.

*Id.* at 483-84.

In *Sandin*, the inmate was sentenced to thirty days of

disciplinary confinement in the Special Holding Unit.  As a

result of the prisoner's disciplinary segregation he "had to

spend his entire time alone in his cell (with the exception of

50 minutes each day on average for brief exercise and shower

periods, during which he nonetheless remained isolated from

other inmates and was constrained by leg irons and waist

chains)." *Id.* at 494 (Breyer, J. dissenting).  The Court

concluded that the inmate's thirty days in the Special Holding

Unit, considered within the context of prison confinement, did

not impose the type of atypical and significant deprivation of

liberty in which the state could be seen to have created a
liberty interest. *Id.* at 486.  The Court noted that
disciplinary confinement at the prison in question, with only
insignificant exceptions, mirrored conditions imposed on
inmates in administrative and protective custody; that based
on a comparison of inmates inside of and outside of
disciplinary segregation, placement in segregation for thirty
days did not work a major disruption in the inmate's
environment; that disciplinary action did not inevitably
affect the duration of the inmate's sentence; and that the
"regime to which [the inmate] was subjected was within the
range of confinement to be normally expected for one serving
an indeterminate term of 30 years to life." *Id*. at 486-87.

"After *Sandin,* it is clear that the touchstone of the
inquiry into the existence of a protected, state-created
liberty interest in avoiding restrictive conditions of
confinement is not the language of regulations regarding those
conditions but the nature of those conditions themselves 'in
relation to the ordinary incidents of prison life.'" *Wilkinson
v. Austin*, 545 U.S. 209, 223 (2005)(quoting *Sandin, supra,* 515
U.S. at 484).  In deciding whether a protected liberty

68

interest exists under *Sandin*, we consider the duration of the confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn,* 318 F.3d 523, 532 (3d Cir. 2003). Whether a protected liberty interest exists under *Sandin* requires inquiry into the specific facts of the case. *Id.* at 533. But, "inmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest." *Burns v. Pennsylvania Dept. of Corrections,* 642 F.3d 163, 171 (3d Cir. 2011).

Construing the allegations in the third amended complaint in the light most favorable to the plaintiff, the plaintiff has alleged facts from which it can reasonably be inferred that he was subjected to atypical and significant hardships in relation to the ordinary incidents of prison life such that he had an interest protected by the Due Process Clause. He alleges that he was subject to the conditions for a lengthy period of time—360 days as to the one misconduct and 180 days as to the other. He also alleges that he was subject to harsh conditions and to some conditions which can be seen

69

as atypical including the denial of meals, the denial of
medication, and his cell being flooded with water containing
feces.

Having determined that the plaintiff has sufficiently
alleged facts from which it can reasonably be inferred that he
has a liberty interest, the next question is whether he has
alleged facts from which it can reasonably be inferred that he
was denied the process that he was due.

"Prison disciplinary proceedings are not part of a
criminal prosecution, and the full panoply of rights due a
defendant in such proceedings does not apply." *Wolff v.*
*McDonnell*, 418 U.S. 539, 556 (1974).  In *Wolff,* the Supreme
Court set forth what process is due a prisoner who is facing a
serious institutional misconduct charge which could lead to
the deprivation of a liberty interest protected by the Due
Process Clause.  The Court held that due process requires that
the prisoner receive at least 24 hours advance written notice
of the claimed violations. *Id.* at 564.  The inmate must be
allowed to call witnesses and to present documentary evidence
in his defense when permitting him to do so will not be unduly

hazardous to institutional safety or correctional goals. *Id.* at 566.  Where an illiterate inmate is involved or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, the inmate should be allowed to seek the aid of a fellow inmate or aid in the form of help from a staff member. *Id.* at 570.  There must be a written statement of the fact finder as to the evidence relied upon and the reasons for the disciplinary action taken. *Id.* at 564.  Additionally, due process requires that there be some evidence to support the findings made in the disciplinary hearing. *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

    The plaintiff alleges among other things that he was not permitted to call witnesses or present video evidence. And he alleges that there was no penological reason for not allowing him to present such witnesses and evidence.  Given these allegations, the third amended complaint states a due process claim upon which relief can be granted with respect to disciplinary proceedings involving the misconducts issues by defendants Santarelli and Pieczynski.

As to the misconduct issued by Nurse Harrison, the plaintiff alleges that, at the disciplinary hearing, defendant McKeown dismissed the charges without prejudice.  He does not allege that the charges were refiled.  Since the charges were dismissed, the third amended complaint fails to state a due process claim upon which relief can be granted based on the disciplinary process arising from the misconduct issued by Nurse Harrison.

2.  Retaliation.

We determined that the second amended complaint stated a retaliation claim against defendant Pieczynski based upon the issuance of a misconduct.  The plaintiff has included that claim in his third amended complaint, and defendant Pieczynski has not moved to dismiss the claim.

The plaintiff also claims that the misconducts issued by Nurse Harrison and defendant Santarelli were in retaliation for his legal actions.

72

The charges in the misconduct report issued by Nurse Harrison were dismissed and the plaintiff was not sanctioned as a result of the misconduct.  As set forth above, we will recommend that Nurse Harrison be dismissed as a defendant since the plaintiff did not have leave to amend to add additional defendants.  The plaintiff claims that defendants Stanishefski, Leskowsky, Walsh, and Varner retaliated against him in denying his grievance and grievance appeals regarding the dismissed misconduct.  But he has not alleged any facts from which it can reasonably be inferred that defendants Stanishefski, Leskowsky, Walsh, and Varner denied his grievances and appeals because of his legal activities. Accordingly, the third amended complaint fails to state a retaliation claim upon which relief can be granted against defendants Stanishefski, Leskowsky, Walsh, and Varner.

The plaintiff claims that defendant Santarelli accused him of misconduct, after she had mistakenly identified him, because he had asked for a grievance form.  More specifically, he alleges that defendant Santarelli accused him of masturbating in front of her but then changed her statement. Her changed statement was that she had seen an inmate

masturbating in one of a group of several cells.  She had
expressed uncertainty about what she had seen but, she said,
she was going to catch him.  As she walked off, the plaintiff
asked for a grievance form and she said "No!"

Construing the allegations liberally and in the light
most favorable to the plaintiff, as we must when deciding a
motion to dismiss, the plaintiff has sufficiently alleged
facts from which it can reasonably be inferred that defendant
Santarelli was not sure if the plaintiff was the one she had
seen masturbating and that she would probably not have issued
the misconduct report if the plaintiff had not asked for a
grievance.  Accordingly, the third amended complaint states a
retaliation claim upon which relief can be granted against
defendant Santarelli.

IV. Recommendations.

Because the plaintiff did not have leave to amend as
to these defendants and claims, it is recommended that
defendants Chakan, Waligun, Wilson, Harrison, Matysik, Vital,

Bunk, Purcell, Klopotoski, and Frace be dismissed, that the
claim in Part Nine of the third amended complaint be
dismissed, that the Eighth Amendment claim based on the
administration of the vaccine and the alleged failure to treat
the side effects caused by the vaccine be dismissed, and that
the due process and Eighth Amendment claims arising from the
cell search and destruction of the plaintiff's property be
dismissed.

It is further recommended that defendant Bohinski's
motion (doc. 94) to dismiss the third amended complaint be
granted.  It is recommended that the corrections defendants'
motion (doc. 100) to dismiss the third amended complaint or in
the alternative for summary judgment be granted in part and
denied in part.  It is recommended that the Eighth Amendment
claims regarding the denial of antifungal cream and defendant
Pieczynski throwing the plaintiff's medication on the ground
be dismissed.  It is recommended that defendant Pieczynski be
granted summary judgment as to the due process claim that she
forced the plaintiff to take a vaccine without his consent.
It is recommended that the access-to-the-courts claim, the
retaliation claim, and the conspiracy claim relating to the

cell search and confiscation of property be dismissed.  It is recommended that the due process and retaliation claims based on the misconduct issued by Nurse Harrison be dismissed.

It is recommended that the following claims not be dismissed: the retaliation claims against defendants Pieczynski and Santarelli based on the issuance of misconducts, the Eighth Amendment claim based on the conditions in the Restricted Housing Unit, and the due process claims based on the disciplinary process in connection with the misconducts issued by defendants Pieczynski and Santarelli.

Finally, it is recommended that the case be remanded to the undersigned for further proceedings.


**_/s/ J. Andrew Smyser_**
J. Andrew Smyser
Magistrate Judge


Dated:  June 1, 2012.