UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVON R. HAYES,                    : CIVIL NO: 3:11-CV-00168
                                   :
            Plaintiff              :
                                   : (Judge Caputo)
      v.                           :
                                   : (Magistrate Judge Carlson)
JEFFREY BEARD, *et al.*,            :
                                   :
            Defendants             :


## REPORT AND RECOMMENDATION


## I. Introduction.


        The plaintiff, Davon R. Hayes, is a state prisoner
proceeding *pro se*.  Previously this court dismissed many of the
claims raised by Hayes in his various complaints.  The
remaining defendants now seek summary judgment on one subset of
the remaining claims advanced by Hayes, i.e., on the Eighth
Amendment conditions-of-confinement claims. For the reasons set
forth below, we recommend that the defendants' motion for
summary judgment be granted.


## II.  Background and Procedural History.


        Hayes began this 42 U.S.C. § 1983 action by filing a
complaint, which he later amended three separate times. Thus,

the applicable complaint now before the court in this matter is the plaintiff's third amended complaint, which names 24 defendants and sets forth numerous claims. The court has previously dismissed all of the claims in third amended complaint except the following claims: retaliation claims against defendants Pieczynski and Santarelli based on the issuance of misconducts; Eighth Amendment claims based on the conditions in the Restricted Housing Unit; due process claims based on the disciplinary process in connection with the misconducts issued by defendants Pieczynski and Santarelli; an Eighth Amendment claim against defendant Pieczynski based on her pouring Hayes's medication on the ground; and a retaliation claim against defendant Pieczynski based on a cell search and confiscation of property.

The remaining defendants filed an answer to the third amended complaint, and they have now filed a motion for partial summary judgment on the Eighth Amendment claims based on the conditions in the Restricted Housing Unit. In that regard, Hayes alleges that he was confined in the Restricted Housing Unit under harsh conditions including the following: bright lights for seventeen and one half hours a day; limited showers; shower facilities that have mold on the walls, rusty pipes, and

chipped paint falling from the ceilings; limited exercise; cold food; denial of meal trays; poor ventilation; inmates who throw urine and feces in the air vents, in the exercise cages, in the showers, and on each other; flooding of the tier and his cell with toilet water that contains feces; and near constant banging and yelling.[1] He alleges that he was confined in the Restricted Housing Unit for 360 days without adequate lighting, food, bedding, and toilet facilities. He also alleges that he was held without access to showers, yard, legal materials, the law library, work or school details, contact visits, and telephone and commissary privileges. He alleges that he was confined in the Restricted Housing Unit for another 180 days under similar conditions, and he lost forty pounds while there. Hayes contends that the defendants knew about the conditions in the Restricted Housing Unit while he was confined there and knew that such conditions can cause psychological and physical harm.

The defendants' motion for summary judgment on the Eighth Amendment conditions-of-confinement claims has been

---

1. In addition, Hayes also alleges that he was denied dental and medical appointments and medications. The majority of Hayes's medical claims have, however, previously been dismissed.

briefed[2], and we address that motion in this Report and
Recommendation.

**III. Discussion.**

   **A. Summary Judgment—Standard of Review.**

Summary judgment is appropriate "if the movant shows
that there is no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(a).  The moving party bears the initial
responsibility of informing the court of the basis for its
motion and identifying those portions of the record which
demonstrate the absence of a genuine dispute of material fact.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Summary judgment is not appropriate when there is a
genuine dispute about a material fact. *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if

---

2.  We note that Hayes has filed a letter suggesting that the Clerk
of Court has not docketed some of his filings.  The Clerk of Court
has docketed all of Hayes's filings, but the Clerk docketed Hayes's
brief in opposition to the motion for summary judgment, his
exhibits, and his response to the defendants' statement of material
facts all as one document—document number 134.

it will affect the outcome of the trial under governing law.
*Id.* A dispute as to a material fact is "'genuine' only if a
reasonable jury, considering the evidence presented, could find
for the non-moving party." *Childers v. Joseph*, 842 F.2d 689,
693-94 (3d Cir. 1988). "Where the record taken as a whole
could not lead a rational trier of fact to find for the non-
moving party, there is no 'genuine issue for trial.'"
*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S.
574, 587 (1986). "If the evidence is merely colorable . . . or
is not significantly probative . . . summary judgment may be
granted." *Anderson, supra,* 477 U.S. at 249-50. In determining
whether a genuine issue of material fact exists, the court must
consider all evidence in the light most favorable to the
nonmoving party. *White v. Westinghouse Electric Co.*, 862 F.2d
56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is
not to weigh the evidence or to determine the truth of the
matter, but it is to determine whether there is a genuine issue
for trial. *Anderson, supra,* 477 U.S. at 249. The proper
inquiry of the court "is the threshold inquiry of determining
whether there is the need for a trial—whether, in other words,

there are any genuine factual issues that properly can be
resolved only by a finder of fact because they may reasonably
be resolved in favor of either party." *Id.* at 250.

**B. Because Hayes Failed to Exhaust Administrative
Remedies, the Defendants Are Entitled to Summary
Judgment on All of the Eighth Amendment Conditions
Claims Expect the Claims About the Ventilation System,
the Lighting, Officers not Wearing Hats or Hairnets
when Serving Food, and the Lack of Covers for the Food
Trays.**

We turn first to the defendants' contention that Hayes
failed to exhaust administrative remedies as to the majority of
his conditions-of-confinement claims.

42 U.S.C. § 1997e(a), provides:

No action shall be brought with respect
to prison conditions under section 1983 of
this title, or any other Federal law, by a
prisoner confined in any jail, prison, or
other correctional facility until such
administrative remedies as are available are
exhausted.

In accordance with § 1997e(a), the exhaustion of
available administrative remedies is mandatory. *Booth v.
Churner*, 532 U.S. 731, 739 (2001). The "exhaustion requirement

applies to all inmate suits about prison life, whether they
involve general circumstances or particular episodes, and
whether they allege excessive force or some other wrong."
*Porter v. Nussle*, 534 U.S. 516, 532 (2002). A prisoner must
"exhaust all available administrative remedies" regardless of
whether the administrative process may provide the prisoner
with the relief that he is seeking. *Nyhuis v. Reno*, 204 F.3d
65, 75 (3d Cir. 2000). "[C]ompliance with the administrative
remedy scheme will be satisfactory if it is substantial." *Id.*
at 77. Failure to exhaust available administrative remedies is
an affirmative defense. *Jones v. Bock,* 549 U.S. 199, 216
(2007). As an affirmative defense, the failure to exhaust
available administrative remedies must be pleaded and proven by
the defendants. *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir.
2002).

42 U.S.C. § 1997e(a) requires proper exhaustion.
*Woodford v. Ngo,* 548 U.S. 81 (2006). In other words,
§ 1997e(a) requires more than simple exhaustion, i.e., more
than that there is no further process available to the inmate
within the grievance system. *Spruill v. Gillis*, 372 F.3d 218,
227-31 (3d Cir. 2004). Section 1997e(a) requires that an

inmate follow the procedural requirements set forth in the administrative remedy process that is available to him. *Id.* at 231. The prison grievance procedures supply the yardstick for measuring whether exhaustion was proper. *Id. See also Jones, supra,* 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

The Pennsylvania Department of Corrections has implemented an official Inmate Grievance System. The grievance system is governed by Administrative Directive 804 (DC-ADM 804). DC-ADM 804 sets forth a three-tier administrative remedy system. Pursuant to DC-ADM 804, an inmate is required to present his grievance to the Facility Grievance Coordinator for initial review within fifteen days after the events upon which the grievance is based. The inmate is required to appeal an adverse determination by the Facility Grievance Coordinator to the Facility Manager. From there the inmate must appeal to the Secretary's Office of Inmate Grievances and Appeals.

The following facts relevant to the exhaustion issue are not in dispute. Hayes was incarcerated at SCI-Dallas from October of 2008 to June of 2011. *Doc. 129* at ¶3 and *Doc. 134* at p.83, ¶3. He began his confinement in the Restricted Housing Unit in August of 2009. *Id.* at ¶4. During his stay at SCI-Dallas, Hayes filed 101 grievances, but he did not file any grievance about many of the matters set forth in his third amended complaint. Thus, Hayes never filed any grievance about feces in the air vents, about being housed next to an inmate with HIV who threw feces and urine, about feces or urine flowing into his cell, about being denied outdoor recreation or receiving insufficient indoor recreation, about the noise level, or about being exposed to inmates throwing feces and urine on him or on each other. *Id.* at ¶¶21, 26, 27, 29, & 34-36.

Hayes filed a grievance (Grievance No. 356615) complaining about the showers in the Restricted Housing Unit not being properly sanitized, about the desks having protruding bolts, and about officers not wearing hats and beard nets when serving food. *Id.* at ¶37. That grievance, however, was rejected on the basis that it improperly combined multiple issues and that it complained about matters not personally

affecting Hayes, and Hayes never appealed the rejection of that grievance or followed up on it. *Id.* at ¶¶37-38. Thus, Hayes never fully exhausted his administrative remedies with respect to this issue.

Hayes filed two grievances concerning the lighting in the Restricted Housing Unit. *Id.* at ¶31-32. He did not appeal the denial of his first grievance (Grievance No. 303888). *Id.* at ¶31. He contends that he did not receive a response to that grievance, and therefore he asserts he could not appeal. *Doc. 134* at p. 17, ¶6. Hayes filed a second grievance (Grievance No. 321949), which was rejected because the subject matter had been addressed in his earlier grievance. *Doc. 129* at ¶33 and *Doc. 134* at p.86, ¶33. Hayes appealed the rejection of that grievance to final review, but the rejection was upheld because Hayes had previously filed a grievance concerning the same issue. *Id.*

Hayes appealed only five of his grievances relating to conditions in the Restricted Housing Unit to the Secretary's Office of Grievances and Appeals, which is the final level of review available under DC-ADM 804. *Id.* at ¶23. Hayes appealed

the following five grievances to final review: Grievance No
321947 (complaining about the ventilation system); Grievance
No. 321949 (the second grievance complaining about the
lighting); Grievance No. 326733 (complaining about officers not
wearing hats or hairnets when serving food); Grievance No.
327571 (complaining that the water was brown and dirty); and
Grievance No. 327557 (complaining that there was no covering
for the food trays). *Id.* at ¶24.  The third amended complaint
does not contain a claim relating to the quality of water. *Id.*
at ¶25.

The defendants argue that Hayes did not file grievances
or appeal the denial of grievances for the majority of the
conditions of the Restricted Housing Unit that he is now
challenging.  Hayes counters that he did not need to file any
grievances in order to exhaust administrative remedies because
he was subject to the conditions in the Restricted Housing
Unit, which he contends amounted to atypical and significant
hardships in relation to the ordinary incidents of prison life,
as a result of misconduct proceedings which violated his due
process rights and he appealed the misconduct decisions that
lead to this confinement in the Restricted Housing Unit.  The

court has construed the third amended complaint as containing both Eighth Amendment claims based on the conditions in the Restricted Housing Unit and due process claims based on the disciplinary proceedings. They are two distinct categories of claims. That Hayes appealed the disciplinary decisions does not mean he exhausted administrative remedies as to his Eighth Amendment conditions-of-confinement claims or that he is excused from exhausting administrative remedies as to his Eighth Amendment claims.

The defendants assert that Hayes has procedurally defaulted his claim as to the lighting in the Restricted Housing Unit because although he filed two grievances concerning the lighting, he failed to appeal the first one to final review and the second one was rejected as duplicative. This is not the first time that we have been required to address the issue whether Hayes exhausted as to a claim that the lighting in the Restricted Housing Unit violated his rights. Hayes is one of the plaintiffs in *Mable v. Beard*, 3:10-CV-1214 (M.D.Pa.), a case which challenges the lighting in the Restricted Housing Unit at SCI-Dallas. In that case,

concluding that Hayes failed to exhaust administrative remedies, we reasoned as follows:

> The defendants acknowledge that at his deposition Hayes claimed that he never received the Superintendent's response to his first grievance and so he could not appeal to final review. But they point out that Hayes has no proof that he ever followed up with the Grievance Coordinator concerning his appeal. Although Hayes may not have been able to file an appeal without first receiving the Superintendent's response, he cannot merely sit on his rights indefinitely without taking any action. When he did not receive a response from the Superintendent, he could have inquired or filed a request slip inquiring about the matter. Because he did not do so, we conclude that he failed to exhaust administrative remedies through his first grievance.

> Hayes appealed the rejection of his second grievance as duplicative to final review, but the Office of Inmate Grievance and Appeals upheld the rejection as proper. We agree with the defendants that because the merits of that grievance were not addressed at the final review stage and because an appeal of a rejection is not the same as an appeal to final review on the merits, Hayes failed to exhaust administrative remedies through his second grievance.

*Mable, supra, Doc. 191 (Pending Report and Recommendation dated Sept. 21, 2012)* at 36-37.

In *Mable,* Hayes did not file a declaration in
opposition to the motion for summary judgment.  In contrast, in
this case Hayes filed a declaration in which he states that he
appealed to Superintendent Walsh complaining about not
receiving a response to his grievance, but, he contends, he
never received a response from Walsh.

Importantly for purposes of this case, an inmate is
only required to exhaust administrative remedies that are
available to him:

> The PLRA does not require exhaustion of all
> remedies.  Rather it requires exhaustion of
> such administrative remedies "as are
> available." 42 U.S.C. § 1997e(a); *Camp v.
> Brennan,* 219 F.3d at 281.  An administrative
> remedy may be found to be unavailable where a
> prisoner is prevented by prison authorities
> from pursuing the prison grievance process.
> *See e.g., Camp* 219 F.3d at 280-81 (finding
> that inmate put on grievance restriction);
> *Brown v. Croak,* 312 F.3d 109, 112 (3d
> Cir.2002) (noting that prison security
> officials told inmate he must wait to file a
> grievance until the investigation was
> complete).

*Oliver v. Moore*, 145 F. App'x 731, 734-35 (3d Cir. 2005).

The exhaustion requirement is absolute except in those
circumstances where no administrative remedy is available for

an inmate to use. *See Spruill v. Gillis,* 372 F.3d 218, 231 (3d Cir.2004). "'Available' remedies are those 'capable of use' or those 'at hand.'" *Ricketts v. AW of Unicor,* 1:CV-07-0049, 2008 WL 1990897, *5 (M.D. Pa.2008)(citing *Brown v. Croak,* 312 F.3d 109, 113 (3d Cir. 2002)). "If there is a question as to availability of administrative remedies, summary judgment or dismissal is inappropriate." *Mendez v. Sullivan,* No. 3:11-CV-00287, 2012 WL 760724, *4 (M.D. Pa. Mar. 7, 2012). *See also, e.g., Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir. 2003) (holding that district court erred by dismissing an inmate's complaint when he claimed that administrative remedies were unavailable because prison officials denied him necessary grievance forms); *Brown, supra,* 312 F.3d at 113 (concluding that dismissal inappropriate where availability of administrative remedies was disputed because prison officials told inmate to wait to file a grievance until after completion of an investigation); *Kantamanto v. King,* 651 F.Supp.2d 313, 324 (E.D. Pa. 2009)(denying summary judgment because disputed issues of material fact existed as to whether an inmate was denied access to proper forms, whether inmate knew he could appeal grievance through a letter to the Commissioner, and whether such a letter was sent).

In this case, given Hayes's assertion that he attempted to exhaust administrative remedies about the lighting but was thwarted from doing so by the failure of prison officials to respond to his requests, we conclude that there is a material factual dispute about whether administrative remedies were available to Hayes. Thus, summary judgment is not appropriate as to the lighting claim on the basis of a failure to exhaust administrative remedies.

In summary, because Hayes failed to exhaust administrative remedies, the defendants are entitled to summary judgment on all of the Eighth Amendment conditions claims except the claims relating to the ventilation system, the RHU lighting, officers not wearing hats or hairnets when serving food, and the lack of covers for the food trays.

**C. Hayes Should Not be Allowed to Proceed with His Lighting Claim in this Case Because he has Presented that Same Claim in an Earlier Case.**

As indicated above, Hayes presents in this case the same Eighth Amendment lighting claim that he presented in *Mable v. Beard,* 3:10-CV-1214 (M.D.Pa.). This runs afoul of a

longstanding legal tenet known as the "first-filed" rule:

> Nearly fifty years ago, this court adopted what has become known as the "first-filed" rule. We concluded that "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir.1941) (quoting *Smith v. McIver,* 22 U.S. (9 Wheat.) 532, 6 L.Ed. 152 (1824)), *cert. denied,* 315 U.S. 813, 62 S.Ct. 798, 86 L.Ed. 1211 (1942). Since then, this policy of comity has served to counsel trial judges to exercise their discretion by enjoining the subsequent prosecution of "similar cases ... in different federal district courts." *See generally Compagnie Des Bauxites De Guinea v. Insurance Co. of North America,* 651 F.2d 877, 887 n. 10 (3d Cir.1981), *cert. denied,* 457 U.S. 1105, 102 S.Ct. 2902, 73 L.Ed. 1312 (1982); *see also Berkshire Intern. Corp. v. Marquez,* 69 F.R.D. 583, 586 (E.D.Pa.1976) ("it has long been the policy of our Circuit Court that absent unusual circumstances" the first-filed rule applies in cases of concurrent federal jurisdiction); *accord West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,* 751 F.2d 721, 728 (5th Cir.1985) ("federal courts have long recognized that ... comity requires federal district courts ... to exercise care to avoid interference with each other's affairs.").

*E.E.O.C. v. Univ. of Pennsylvania,* 850 F.2d 969, 971 (3d Cir. 1988).

While the "first-filed" rule typically applies when overlapping claims are brought by a party in different courts, the principles which animate this policy apply with equal force

17

to a situation like that presented here, where Hayes filed the same claim in successive, but separate, lawsuits before this Court.  In this setting, where a single legal claim arising out of a specific set of facts is brought in two separate actions, under the "first-filed" rule the proper exercise of discretion would call for us to dismiss the second claim in favor of having the parties proceed on the first-filed action. *See Time Warner Cable, Inc. v. USA Video Technology Corp.,* 520 F.Supp.2d 579 (D.Del. 2007).

In accordance with first-filed rule, we recommend that the lighting claim be dismissed because Hayes is pursuing that claim in the earlier-filed *Mable* case.

**D. The Defendants Are Entitled to Summary Judgment on the Merits of the Remaining Eighth Amendment Conditions-of-Confinement Claims.**

The remaining Eighth Amendment conditions-of-confinement claims as to which Hayes has exhausted administrative remedies are his claims relating to the

ventilation system, officers not wearing hats or hairnets when serving food, and the lack of covers for the food trays.

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Unnecessary and wanton inflictions of pain include those that are totally without penological justification. *Hope v. Pelzer*, 536 U.S. 730, 737 (2002). Conditions which inflict needless suffering, whether physical or mental, may constitute cruel and unusual punishment. *Tillery v. Owens*, 719 F.Supp. 1256, 1275 (W.D. Pa. 1989), *aff'd*, 907 F.2d 418 (3d Cir. 1990).

An Eighth Amendment claim gives rise to a two-prong analysis. Eighth Amendment claims must satisfy both an objective component (the deprivation must be sufficiently serious) and a subjective component (the defendant must have been deliberately indifferent). *Young v. Quinlan*, 960 F.2d 351, 359-60 (3d Cir. 1992). As to the objective component, the Eighth Amendment is violated only when an inmate is deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). As to the subjective

component, the question is whether the prison official acted with deliberate indifference to the inmate's health or safety. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). To act with deliberate indifference, the prison official must have known of the substantial risk of serious harm and must have disregarded that risk by failing to take reasonable measures to abate it. *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

Judged against these legal benchmarks, Hayes has failed to present evidence from which a reasonable factfinder could conclude that the defendants were deliberately indifferent to a substantial risk of serious harm as to the ventilation in the Restricted Housing Unit. Although Hayes asserts that the air quality was poor and he subjectively believes that the ventilation was insufficient, he had not presented evidence to

create a genuine dispute about the ventilation system in the Restricted Housing Unit. The following facts, based on the declaration of the Safety Manager at SCI-Dallas, are not in dispute.

The indoor air quality at the SCI-Dallas Restricted Housing Unit has been tested annually during the relevant years. *Doc. 129* at ¶40 and *Doc. 134* at p. 87, ¶40. Each of those years, Safety Manager Sowga tested the ventilation inside two cells that are representative of all of the other cells in the Restricted Housing Unit. *Id.* at ¶41. Each of those years, the ventilation standard far exceeded the standard set by the American Correctional Association for indoor air quality. *Id.* at ¶42. Additionally, on October 2, 2009, Safety Manager Sowga tested Cell KA-35, which is the cell that Hayes was later housed in when in June of 2010 he filed a grievance about the ventilation system. *Id.* at ¶43. On October 9, 2009, Cell KA-35 had an air exchange rate of 125 cubic feet of air per minute, which greatly exceeds the American Correctional Association's standard of 15 cubic feet of air per minute. *Id.* at ¶44.

Hayes attempts to counter these facts by asserting that Safety Manager Sowga's declaration, on which the above facts are based, is false and contradictory. Hayes, however, has not presented evidence to support that assertion. He has not shown through competent evidence that the statements in Sowga's declaration are false. This is a fatal flaw since as a matter of law a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." *Countryside Oil Co., Inc. v. Travelers Ins. Co.,* 928 F.Supp. 474, 482 (D.N.J.1995). Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment and where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. *See, e.g., Synthes v. Globus Medical, Inc.*, No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); *Bouriez v. Carnegie Mellon Univ.*, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); *Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc.*, 256 F.Supp.2d 249 (D.N.J.

2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." *Thimons v. PNC Bank, NA*, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." *Fireman's Ins. Co. of Newark NJ v. DuFresne*, 676 F.2d 965, 968 (3d Cir. 1982). *See also Sunshine Books, Ltd. v. Temple Univ.*, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." *Lockhart v. Hoenstine*, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." *Gans v. Mundy,* 762 F.2d 338, 341 (3d Cir. 1985)(citing *Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981)).

Moreover, in any event, Hayes's contention that Sowga's declaration is contradictory is based on a misreading or a

misunderstanding of the statements in the declaration. For example, Hayes asserts that the declaration is contradictory because Sowga stated that he tested all cells in the Restricted Housing Unit and he also stated that he tested two cells that are representative of the others cells. Sowga's declaration, however, is not contradictory because it is clear from the declaration that Sowga is stating that every year he tests two representative cells and that in October of 2009 he additionally tested every cell in the Restricted Housing Unit, and the records attached to the declaration support that assertion. Hayes also attacks Sowga's declaration on the grounds that he was not housed in Cell KA-35 on October 2, 2009, when Sowga tested that cell. But Sowga does not say that Hayes was housed in that cell in October of 2009. Instead, Sowga says that Hayes was housed in that cell when Hayes filed his grievance regarding the ventilation system, and that grievance was filed in June of 2010. Hayes further asserts that because of the plexiglass on the cell doors the air does not circulate. But Sowga asserts in his declaration that he tested the cells both with the cell door open and with the cell door closed and the results were the same, and Hayes's subjective belief regarding a lack of air circulation in the

24

face of the tests performed by Sowga does not lead to a reasonable inference that there was a substantial risk of serious harm as a result of the ventilation in the Restricted Housing Unit. Finally, Hayes points to the fact that during the summer the administration places eight fans on K Block. The action of placing fans on the Block, however, does not lead to a reasonable inference that the ventilation system placed the inmates at a substantial risk of serious harm. After all, it is not uncommon for residences and businesses to use fans during the summer months, and such use is not indicative of a ventilation system so deficient that it could be said to violate the minimal civilized measure of life's necessities. Quite the contrary, these facts alleged by Hayes affirmatively reveal that corrections staff are striving to improve housing conditions in the RHU and contradict Hayes's claims that staff are deliberately indifferent to the conditions of his confinement.

Given the undisputed facts, Hayes has failed to establish that the defendants were deliberately indifferent to a substantial risk of serious harm to him as a result of the ventilation in the Restricted Housing Unit. Accordingly, the

defendants are entitled to summary judgment on the Eighth
Amendment claim based on the ventilation.

Hayes's claims based on the manner that his food was
served to him also fail. He claims that the food was served by
officers who did not wear hats or hairnets and that the food
trays did not have covers on them, which he asserts was
unsanitary because it permitted outside objects to enter the
food. When courts have in the past considered specific
conditions of confinement alleged by inmates under the Eighth
Amendment standard, it is apparent that the complaints advanced
by Hayes have been found not to deprive inmates of the minimal
civilized measure of life's necessities. Courts have
frequently rebuffed inmate complaints like those made here
relating to the packaging and presentation of meals. Thus,
"while prisoners are guaranteed a nutritionally adequate diet
under the Eighth Amendment, there is no constitutional right to
hot meals." *Laufgas v. Speziale*, 263 F.App'x. 192, 198 (3d Cir.
2008)(citation omitted). And courts have held the officers'
failure to wear hairnets when serving food does not amount to
an Eighth Amendment violation. *See e.g. Matthews v. Petrilla,*
Civil No. 3:11-CV-2282, 2012 WL 3782525 at *4-5 (M.D. Pa. Aug.

7, 2012)(Report and Recommendation)(Mannion, M.J.)(recommending that Eighth Amendment claim based in part on officers not wearing hairnets while serving food be dismissed because, among other reasons, such does not rise to the level of an Eighth Amendment violation), *adopted,* 2012 WL 3781174 (M.D. Pa. Aug. 31, 2012)(Caputo, J.). *See also Cortino v. Karnes,* Civil No. 1:11-CV-2142, 2012 WL 2921785 at *11 (M.D.Pa. Jan. 25, 2012)(Report and Recommendation)(Carlson, M.J.)(concluding that claims that food was cold, unappetizing, and poorly presented "simply do not state an infraction of constitutional dimension"), *adopted by* 2012 WL 2921511 (M.D.Pa. July 17, 2012)(Caldwell, J.);*Hamm v. DeKalb Cnty*., 774 F.2d 1567, 1575 (11th Cir. 1985)("[t]he fact that food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation.").

Because Hayes has failed to establish that the manner in which food was served to him violated the Eighth Amendment, it is recommended that the defendants be granted summary judgment on the claims based on the officers not wearing hats or hairnets while serving the food and the food being served on trays without covers.

27

**E. Defendant MacIntyre Is Entitled to Summary Judgment Because He Was Not Personally Involved in Maintaining the Conditions of the Restricted Housing Unit.**

Finally, one defendant, Defendant MacIntyre, contends that as the Chief Hearing Examiner he was employed in the Department of Corrections' Central Office and, thus, he did not work at SCI-Dallas and he did not have knowledge of or responsibility for the conditions in the Restricted Housing Unit. He asserts that he is entitled to summary judgment on the Eighth Amendment conditions-of-confinement claims because he was not personally involved in the alleged Eighth Amendment violation.

"Liability may not be imposed under § 1983 on the principle of *respondeat superior*." *Hetzel v. Swartz*, 909 F.Supp. 261, 264 (M.D. Pa. 1995). "Liability based on *respondeat superior* arises 'solely on the basis of the existence of an employer-employee relationship,' regardless of whether the employer had any part in causing harm." *Santiago v. Warminster Twp.,* 629 F.3d 121, 128 (3d Cir. 2010)(quoting *Monell v. Dep't of Soc. Services of New York,* 436 U.S. 658, 692 (1978)). "Because vicarious liability is inapplicable to

*Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).

Hayes agrees that defendant MacIntyre was not personally involved in maintaining the conditions in the Restricted Housing Unit and that he should be granted summary judgment on the Eighth Amendment conditions-of-confinement claims. *See Doc. 134* at 13. Thus, in addition to the reasons discussed above, defendant MacIntyre is entitled to summary judgment on the Eighth Amendment claims based on a lack of personal involvement.

**IV. Recommendations.**

Accordingly, for the foregoing reasons, it is recommended that the defendants' motion (doc. 128) for summary judgment on the Eighth Amendment claims based on the conditions in the Restricted Housing Unit be granted and that the case be

remanded to the magistrate judge for further proceedings.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 27th day of November, 2012.

S/*Martin C. Carlson*
Martin C. Carlson
Magistrate Judge